150 So. 286

## NEW ORLEANS REAL ESTATE BOARD et al. v. INSURANCE COMMISSION OF LOUISIANA.

No. 32381.

July 7, 1933.

Rehearing Denied Oct. 3, 1933.

A. D. Danziger, of New Orleans, for appellants.

Gaston L. Porterie, Atty. Gen., and James O'Connor, Asst. Atty. Gen., for appellee.

Lemle, Moreno & Lemle, of New Orleans, for Ætna Fire Ins. Co., and others, interveners.

O'NIELL, Chief Justice.

The New Orleans Real Estate Board and Jung Hotel, Inc., have appealed from a judgment dismissing their suit on an exception of no cause or right of action. In stating the facts, therefore, we refer to the allegations of the plaintiffs' petition.

The New Orleans Real Estate Board is a nontrading corporation, organized under the laws of Louisiana and domiciled in New Or-

leans. The Jung Hotel, Inc., is a corporation also organized under the laws of this state, domiciled in New Orleans, and owning property here, on which the corporation pays annually a large amount in premiums on windstorm insurance, as well as on fire insurance. The New Orleans Real Estate Board has a division, which is named as one of the plaintiffs in this suit, called the Property Owners' Division, composed of owners of property in New Orleans, on which they carry windstorm insurance, as well as fire insurance.

On the 27th of November, 1931, the Property Owners' Division of the New Orleans Real Estate Board, and the Jung Hotel, Inc., submitted a written request to the Insurance Commission for a public hearing on the complaint of the petitioners that the compilations of experience of the fire insurance companies issuing also windstorm insurance policies in New Orleans, for the period of five years preceding the request for the hearing, showed that the companies were earning grossly excessive profits—many times the 5 per cent. permitted by the statute on the subject, Act No. 302 of 1926. After a second request the Insurance Commission granted the hearing and fixed the date as August 10, 1932. At the hearing the complainants submitted figures showing the amount of windstorm insurance premiums received by the companies on business done in Louisiana during the five years, and the amount of losses, and showing that the companies had earned a net underwriting profit of 30.6, without taking into account the investment income derived from their unearned premium reserve and other reserves having their source in the premiums only. It is said in the briefs of the appellants, and seems to be conceded, that, in their petition in this suit, the plaintiffs made the mistake of giving the figures for Texas, instead of the figures for Louisiana, which in reality were $4,801,571 for windstorm insurance premiums received, $517,737 for losses sustained, and hence showed a loss ratio of 10.8 per cent. for the five-year period; to which should be added 42 per cent. for expenses, and which left a net underwriting profit of 47.2 per cent. The important allegation is that the figures showed that the companies were earning a grossly excessive profit—many times the profit permitted by the statute. The complainants before the Insurance Commission contended that the rates on all classes of windstorm insurance should be reduced so that they would not yield to the companies an underwriting profit exceeding, approximately, 5 per cent. The plaintiffs allege in their petition in this suit that, notwithstanding the overwhelming evidence submitted in support of their contention, the Insurance Commission decided, on the 8th of December, 1932, that no reduction in windstorm insurance rates could be permitted until it could be shown that the companies were earning an excessive profit on their entire insurance business in this state, not only on windstorm insurance but also on fire insurance and on automobile insurance against fire and theft—the three kinds of insurance being taken in the aggregate and without distinction—even though there were many fire insurance companies doing business in Louisiana that did not write windstorm insurance.

The complainants then, availing themselves of the provisions of sections 9 and 11 of Act No. 302 of 1926, brought this suit in the

civil district court for a review of the findings and action of the Insurance Commission. After the commission had filed the exception of no cause or right of action, a large number, about 235, fire insurance companies, engaged in writing windstorm insurance, as well as fire insurance, in Louisiana, and being members of the Louisiana Rating and Fire Prevention Bureau, filed a petition of intervention, and, taking the Insurance Commission's side in the suit, pleaded that the plaintiffs had no cause or right of action. The pleas were sustained, as we have said, and the suit was dismissed.

The Attorney General and the attorneys for the intervening insurance companies say in their briefs that the question before the court is whether the limitation put upon the Insurance Commission, by the third paragraph of the tenth section of Act No. 302 of 1926—that the commission shall not approve such a rate as will yield to the stock fire insurance companies an underwriting profit in excess of approximately 5 per cent. on the business done in the state—is applicable to windstorm rates, as well as to fire rates, or is only applicable generally to the underwriting profit on both classes of insurance.

Act No. 302 of 1926 is, according to its title, an act to maintain uniform rates for fire, windstorm and hail, and automobile fire and theft insurance, and to prohibit discrimination in insurance rates. The act provides for the Insurance Commission, composed of three members, and prescribes the duties of the commission. The act provides also that the stock fire insurance companies licensed to do business in Louisiana shall organize a bureau called the Louisiana Rating and Fire

Prevention Bureau; and the act prescribes the duties and functions of the bureau, thus:

"1—To ascertain, determine and fix equitable and undiscriminating rates of premium to be charged on policies of Fire, Windstorm, Hail and Automobile fire and theft insurance, covering on property located in this State and to make rules and regulations for the application of same; but the Bureau shall not fix any rate for Fire, Windstorm, Hail and Automobile Fire and Theft insurance upon the property located in this State, nor make any rules or regulations which discriminates unfairly between risks in the application of like charges and credits, nor which discriminates unfairly between risks of essentially the same hazards, territorial classification· and having, substantially, the same degree of protection against fire.

"No rates, rules or regulations fixed by 'The Louisiana Rating and Fire Prevention Bureau' shall be promulgated without the approval of the Insurance Commission. .

"2—To make inspections of the physical care and condition of risks located in this State; to define the safest methods of construction of buildings; to supervise the installation of electrical and heating apparatus and other devices involving the fire hazard as they may appear from time to time, in order that the chances of fire may be reduced to a minimum." (Section 2.)

The Attorney General and the attorneys for the intervening insurance companies lay great stress upon the fact that the statute refers to "risks * * * having, substantially, the same degree of protection against fire," but has nothing to say about risks having the same degree of protection against windstorm.

That part of the statute, however, deals with windstorm insurance rates and regulations, as well as with fire insurance rates and regulations. Our analysis of the proviso in the statute is that the bureau shall not fix any rate for fire insurance, windstorm insurance, hail insurance, or automobile fire and theft insurance, and shall not make any rule or regulation with regard to any of these classes of insurance, which rate or rule or regulation discriminates unfairly between risks in the application of like charges and credits, or which rate or rule or regulation discriminates unfairly between risks of essentially the same hazards, or between risks having the same territorial classification and, substantially, the same degree of protection against fire. The prohibition against unfair discrimination between risks having substantially the same degree of protection against fire, of course, has reference only to fire insurance rates and rules and regulations; but the language of the statute seems to forbid also the fixing of any rate or the making of any rule or regulation discriminating unfairly between risks other than those having substantially the same degree of protection against fire. We have some doubt about that, for want of sufficient information of the customs of the insurance business. For example, we assume that, in the prohibition against unfair discrimination between risks *in the application of like charges and credits*, the term *charges* means something which increases the hazard, and *credits* means something which lessens the hazard. But, assuming that to be true, we do not know, without hearing further from the defendant, Insurance Commission, or from the intervening members of the Louisiana Rating

and Fire Prevention Bureau, whether the prohibition against unfair discrimination between risks *in the application of like charges and credits* has reference only to the rates and rules and regulations for fire insurance, or refers also to rates and rules and regulations for other kinds of insurance.

The tenth section of the act, in the first paragraph, provides that the Insurance Commission shall require each stock fire insurance company licensed to do business in Louisiana, *and all other insurers who may come under the provisions of this act*, to file with the commission, annually, on or before the 1st day of April, a report showing *separately*, by customary classifications, the total fire, windstorm, hail, and automobile fire and theft insurance premiums received (less return premiums and premiums paid for reinsurance in companies licensed to do business in the state), the net losses and expenses incurred (the expenses being determined by applying the percentage of the company's general expenses to the premium income from business done in the state). The first report required to be filed had to include the premiums received and the losses and expenses incurred during the period of five calendar years immediately preceding the report, and each subsequent report has had to include the net premiums, losses and expenses for the preceding calendar year. In the third paragraph of that section of the statute, it is provided that the insurance commission shall compile the information contained in the reports filed by all of the stock fire insurance companies licensed to do business in the state; and, if it appears to the commission, from the compilation, that the rates charged

for fire insurance are excessive and unreasonable, in that the results of the business of the stock fire insurance companies doing business in the state during the period of five years next preceding the year in which the investigation is made show an aggregate underwriting profit in excess of a reasonable amount, then the insurance commission shall have the power to order the Louisiana Rating and Fire Prevention Bureau to fix—and the insurance commission shall promulgate—such rates as will yield to the stock fire insurance companies an underwriting profit not in excess of approximately 5 per cent. on the business done in the state.

It is argued for the insurance commission and the intervening insurance companies that this limitation of 5 per cent. profit on the business done in the state means 5 per cent. on the total business, including fire insurance, windstorm insurance, and automobile fire and theft insurance. In other words, it is argued that the rates to be charged for windstorm insurance may yield a profit as far above 5 per cent. as the insurance commission sees fit to allow on that class of insurance, so long as the rates allowed on both fire insurance and windstorm insurance do not yield an underwriting profit exceeding 5 per cent. to the companies writing both fire insurance and windstorm insurance in the state. It does seem, from some of the language in the second paragraph of the tenth section of the statute, that the power of the insurance commission to order the Louisiana Rating and Fire Prevention Bureau to reduce insurance rates does not arise unless it appears to the commission that the rates charged for *fire* insurance are excessive and unreasonable. But that is perhaps due to the fact, suggested by

the Attorney General and the attorneys for the intervening insurance companies, that the statute was drafted originally to regulate only fire insurance, and was afterwards vamped or revamped so as to take care of windstorm insurance also. It is not unlikely that the omission of the word "windstorm," in some of the places where the word "fire" is used, happened accidentally in the vamping and revamping of the proposed statute.

In the ninth section, it is provided that the insurance commission *may* on its own motion, but *must* on the written complaint of a citizen *that rates on any class or classes of risk are excessive,* order a hearing *for the purpose of determining such questions of excessive rates;* and that the findings or orders of the commission shall be subject to review by a court of competent jurisdiction, as provided in the eleventh section of the act. That indicates very strongly that any citizen has the right to complain—and to have the commission hear his complaint—that the rates on any class or classes of insurance are excessive. And that indication is strengthened by the provision, in the tenth section of the act, that the annual report to be filed by every stock fire insurance company licensed to do business in the state, and all other insurers who may come under the provisions of the act, must show, *separately* and by customary classification, the total fire insurance, windstorm insurance, hail insurance, and automobile fire and theft insurance premiums received, and losses and expenses incurred, etc. Why should the report have to show *separately* the premiums received and the losses and expenses incurred on windstorm insur-

ance during the five-year period, if there is no limit to the rates which the insurance commission may allow on windstorm insurance? We take it that the term, by customary classification, means the customary subdivision of each kind of insurance; i. e. fire insurance, windstorm insurance, etc. In fact, it is alleged in the plaintiffs' petition that there are fifty subdivisions of windstorm risks.

It is argued for the insurance commission and the interveners that the fixing of rates for windstorm insurance is left entirely to the scientific judgment of the insurance commission, without reference to the experience tables or compilations provided for in the tenth section of the statute, and that the judgment of the commission in that respect is not subject to review by the courts. If the fixing of rates for windstorm insurance were left to the unrestricted discretion or wisdom of the insurance commission, the judgment of the commission in that respect would not be subject to review by the courts. But the statute contains many provisions, which we have pointed out, which are not consistent with the idea that the only restriction upon the windstorm insurance rates which the commission may allow is that the underwriting profits of the stock fire insurance companies shall not exceed 5 per cent. on all of the business done by them in the state—including both fire insurance and windstorm insurance. That idea is not consistent with the allegation in the plaintiffs' petition—which is in fact admitted in the briefs of the defendant and the interveners—that the only windstorm insurance that is written in this state is written by companies writing also fire insurance on property in this state, and that there are many companies that write fire insurance but not windstorm insurance on property in this state. If it is true, as the plaintiffs allege, that the rates charged on windstorm insurance yield to the companies a profit many times 5 per cent. on that class of business, and if it be true, as the insurance commission and the intervening insurance companies claim, that a reduction in the windstorm rates would either require an increase in the fire insurance rates or make that kind of insurance business unprofitable, then the rates that are allowed now discriminate unjustly against the fire insurance companies that write only fire insurance in this state, and the tendency will be to put them out of business. That, of course, would lessen competition in the business, to the prejudice of the property owners in the state, and the people generally. On the other hand, it is argued by the appellants that the volume of fire insurance business done in this state is so much greater than the volume of windstorm insurance business, that the desired reduction in the windstorm rates would require only a very slight increase in the fire insurance rates, to offset the reduction, if in fact it would require any increase at all in the fire insurance rates, to make the combined rates yield approximately 5 per cent. These are matters which cannot be determined without having the defendant's answer to the suit, and perhaps even then without having evidence of the customs of the business, and evidence of such other facts as the statute and the pleadings may not make clear. Our opinion now is that the plaintiffs have alleged a cause of action.

The judgment appealed from is set aside, the exceptions of no cause or right of action are overruled, and the case is ordered remanded to the civil district court for further proceedings consistent with the opinion rendered herein.

ST. PAUL, J., dissents.